John E. WARD, Plaintiff–Appellant,

v.

MANAGEMENT ANALYSIS COMPANY EMPLOYEE DISABILITY BENEFIT PLAN, and Unum Life Insurance Company of America, Defendants–Appellees.

No. 95–56269.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1997.

Decided Feb. 3, 1998.

Brooks L. Iler, Iler & Iler, Janice R. Mazur, Mazur & Mazur, San Diego, California, for plaintiff-appellant.

Russell G. Petti, Bannan, Green, Smith, Frank & Rimac, Los Angeles, California, for defendants-appellees.

Before FLETCHER and TROTT, Circuit Judges, and JENKINS,* District Judge.

JENKINS, District Judge:

John E. Ward ("Ward"), former President and CEO of Management Analysis Company ("MAC"), brought this action under § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, seeking to recover benefits pursuant to his former employer's long-term disability plan. The United States District Court for the Southern District of California granted summary judgment in favor of the Management Analysis Company Employee Disability Benefit Plan (the "MAC Plan") and UNUM Life Insurance Company of America ("UNUM") on the ground that Ward's claim for benefits under UNUM's long-term disability policy was untimely under the notice and proof of claim provisions of that policy. In light of our

---

* Honorable Bruce S. Jenkins, United States Senior District Judge for the District of Utah, sitting by designation.

ruling in a related case, *Cisneros v. UNUM Life Insurance Company of America*, 134 F.3d 939 (9th Cir.1998), that under California law, UNUM must show actual prejudice resulting from a claimant's untimely submission of proof of a claim before it may deny benefits under a plan governed by ERISA, we reverse the judgment in favor of UNUM and the MAC Plan and remand the case for further proceedings. We also remand for a determination of whether MAC received timely notice and proof of Ward's claim of disability while acting as a plan fiduciary and agent of UNUM, should that determination become decisive of the question of timeliness.

## I

Effective November 1, 1983, UNUM issued a Group Long Term Disability Policy to MAC as an insured employee welfare benefit plan governed by ERISA. An employee certificate booklet summarizing the plan benefits was prepared and distributed in quantity to MAC employees, including Ward.

Ward served as President and Chief Executive Officer of MAC until, after being asked to resign by the Board of Directors on May 5, 1992, he resigned on May 8, 1992. In May of 1992, Ward was already suffering from diabetic neuropathy, and avers that prior to his resignation, he had begun experiencing severe and disabling leg pain resulting from that condition.

The nature and extent of his illness and resulting disability were diagnosed by December of 1992. In early 1993, Ward applied for and received state disability benefits, and contacted the MAC human resources division to discuss extension of his continuation insurance coverage under COBRA. In July 1993 he received a determination that he was eligible for Social Security disability benefits, a copy of which he forwarded to the MAC human resources division.

Ward states that he was actually unaware of the availability of the MAC Plan long-term disability benefits until April 1994, when he discovered a booklet describing the coverage among papers in his safety deposit box. Ward completed an application for long-term disability benefits and forwarded the same to MAC. MAC completed the employer information section of the application and forwarded the same to UNUM.

UNUM received notice and proof of Ward's claim on April 11, 1994. By letter dated April 13, 1994, UNUM informed Ward that his claim for benefits was denied as untimely under the terms of the policy. Through counsel, Ward requested that UNUM review the denial of his claim, and by letter dated July 12, 1994, UNUM informed Ward that it had reviewed his claim and affirmed its denial because it was "beyond the time frame stipulated in the policy."

Plaintiff filed his complaint against the MAC Plan to recover his claimed benefits under ERISA on September 15, 1994. UNUM appeared as a defendant and filed an answer on behalf of itself and the MAC Plan on November 23, 1994. On August 8, 1995, the district court granted the defendants' motion for summary judgment, concluding that under the terms of UNUM's policy as written, "plaintiff's claim was late and therefore defendant was not obligated to honor plaintiff's claim for long-term disability benefits."

The district court entered judgment on August 17, 1995, and Ward filed a timely notice of appeal.

## II

We review the district court's grant of summary judgment *de novo*. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Whether ERISA preempts state law is a question of law which we review *de novo*. *Inland Empire Chapter of Associated General Contractors v. Dear*, 77 F.3d 296, 299 (9th Cir.1996). We also review *de novo* the principles of contract interpretation as applied to the facts, including the district court's interpretation of insurance policy language. *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir.), *cert. denied*, 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 521 (1995).

## III

While in his brief Ward lists several issues and makes a series of assertions concerning agency theory under *Elfstrom v. New York Life Ins. Co.*, 67 Cal.2d 503, 432 P.2d 731, 63 Cal.Rptr. 35 (1967), fiduciary duty under ERISA, and the potential liability of the MAC Plan, the appellees aptly restate the

central issue now before us on appeal: "Did the District Court correctly hold that the plaintiff failed to timely submit written notice and proof of claim to UNUM as required by the express terms of the MAC Plan and applicable federal law under ERISA?"

■ UNUM expressly conditions payment of benefits upon submission of proof of claim within the time limits set forth in the policy. Section VI.F.2 of UNUM's policy provides that proof "may not be given later than one year after the time proof is otherwise required," in this instance, "no later than 90 days after the end of the [90–day] elimination period."[1] Section VI.I provides that benefits will be paid "[w]hen the company receives proof of claim." Read together, these provisions logically and unambiguously establish that, under the policy, timely submission of proof is a condition precedent to payment of benefits.

Under the admitted facts of this case, Ward became permanently disabled on May 5, 1992. Using Ward's disability onset date of May 5, 1992, UNUM calculated that his proof of claim must have been received no later than November 5, 1993 in order to be deemed timely under the policy provisions.[2] Ward did not submit notice or proof of his claim directly to UNUM until April 11, 1994. Ward's submission of notice and proof of his claim plainly was untimely under the express terms of the UNUM policy.

■ However, in light of our recent opinion in *Cisneros v. UNUM Life Insurance Company of America*, 134 F.3d 939 (9th Cir.1998), untimeliness under the express terms of the policy does not end the inquiry, at least as to consequence. *Cisneros* holds that a claimant's failure to submit timely proof of claim does not necessarily result in the denial of benefits. *Cisneros* acknowledges that the California "notice-prejudice" rule remains in force respecting benefit plans governed by ERISA as a state law "which regulates insurance" under ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A). Under the "notice-prejudice" rule, the insurer of an ERISA benefit plan may not deny benefits by reason of untimely notice or submission of proof of claim unless the insurer proves that it has suffered actual prejudice because of the delay. *Id.* at 673–75.[3]

■ Contrary to UNUM's assertion in its brief, we are not persuaded that passage of time alone establishes prejudice as a matter of law. *See id.* at 673, 675 (citing *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 845 (1993)). Whether UNUM suffered actual prejudice as a result of Ward's untimely notice remains a genuine issue of material fact. *See Select Ins. Co. v. Superior Court*, 226 Cal.App.3d 631, 276 Cal.Rptr. 598, 602 (1990). Thus, we reverse the district court's judgment in favor of UNUM.

Because neither the plan administrator nor the district court addressed the question of whether the notice-prejudice rule applied to Ward's claim, neither the plan administrator nor the district court determined whether UNUM suffered actual prejudice flowing from Ward's untimely notice and proof of claim.[4] Accordingly, we remand the case to

---

1. The MAC Plan documents provide that the "elimination period" consists of the 90–day period following the date of onset of the insured's disability.

2. The district court's reference to a *December* 5, 1993 cutoff date appears to be simple mathematical error.

3. At the August 3, 1995 hearing on the motion for summary judgment, the district court inquired:

 THE COURT: Is there a body of law that then says that you have to—the company has to show some prejudice?

 MR. SMITH: No, not—not under ERISA. And we have cited as the Court knows, four cases, . . . all of which interpreted this plan language, and all of which, in circumstances almost identical to

this, held that the proof of claim had not been timely provided -

 THE COURT: Now -

 MR. SMITH:—really is under ERISA, and it is those cases that we would submit are controlling. Among the four cases referred to by UNUM counsel was the district court disposition in the *Cisneros* case, now reversed on the precise issue raised by the court's question just quoted.

4. While the district court noted in passing that "[t]he delay in filing precludes UNUM from definitively determining whether plaintiff's disability existed on the date alleged in his claim," the comment was made in the context of a broader policy discussion concerning time limits on claims rather than as a finding of fact based upon a specific evidentiary record. There appears to be little evidence in the present record bearing upon the question of actual prejudice.

the district court with instructions to remand to the plan administrator for a factual determination as to whether UNUM suffered actual prejudice by virtue of Ward's untimely submission of proof.

## IV

■ Ward addresses the timeliness of his claim in another way: he asserts that actual notice of his disability given to MAC as early as March of 1993 operates as notice to UNUM as early as March of 1993 because under California law, an employer who participates in the administration of a group insurance policy acts as an agent of the insurer. He relies on *Elfstrom v. New York Life Ins. Co.*, 67 Cal.2d 503, 432 P.2d 731, 63 Cal.Rptr. 35 (1967), as authority for this proposition. Ward further asserts that if the *Elfstrom* rule is somehow preempted by ERISA, this court should adopt a like rule as a matter of federal common law. Moreover, Ward asserts that MAC breached its duties as an ERISA co-fiduciary to inform him of the availability of long-term disability benefits under the UNUM policy, to receive notice of his claim, and to assist him in furnishing appropriate proof of his claim to UNUM, breaches which Ward contends UNUM was obliged to remedy. *See* 29 U.S.C. § 1105(a) ("a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: . . . (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable

efforts under the circumstances to remedy the breach.").[5]

### *The* Elfstrom *Rule*

In *Elfstrom,* the employer, Fullerton Publishing Co., had obtained a group life insurance policy for the benefit of its employees from the defendant, New York Life. The plaintiff was president and majority shareholder of Fullerton and the father of Brenda, the deceased employee, as well as the beneficiary under his daughter's life insurance certificate. Fullerton's bookkeeper, Mrs. Still, administered the group policy under the direction of a New York Life group representative, following the directions set forth in a manual supplied by New York Life for that purpose. Mrs. Still mistakenly included Brenda as an insured in monthly reports to defendant insurer when, in fact, Brenda was not eligible, because her employment at the minimum salary required had terminated before expiration of the waiting period necessary for coverage. The premiums were paid until Brenda's death, seven months after expiration of the waiting period. Under these facts, the California Supreme Court held that the duties of the employer, discharged by Mrs. Still, in administering the group life insurance policy, made it the agent of defendant insurer, and that the insurer was bound by the mistakes of the employer (per Mrs. Still) acting within the scope of the agency, provided the plaintiff (beneficiary) was acting in good faith in directing her to effect coverage for Brenda.

Paragraph 12 of the Declaration of John A. Houser, III, dated March 29, 1995, makes the conclusory assertion that "[d]uring that nearly two year period" between the onset of Ward's disability and the receipt by UNUM of notice, "UNUM was without knowledge that plaintiff claimed he was 'disabled' and was thereby deprived of the opportunity to fully evaluate his claim and to determine the extent of his disability at the time he claimed to be disabled," but offers no specific evidence showing how that evaluation has been impaired in this case. In fact, the Houser Declaration indicates that UNUM did not undertake to investigate, evaluate or determine Ward's claim on the merits, but assures that "[h]ad plaintiff timely filed his claim for disability benefits under the Policy, UNUM *would have conducted* a thorough claim investigation." *Id.* at ¶ 11 (emphasis added). On remand, UNUM has the burden to prove actual

prejudice, that is, that Ward's delay would have prevented "a thorough claim investigation" in April of 1994 that otherwise would have been possible through November 5, 1993.

5. As Ward noted in his opening brief, whether an individual plan beneficiary may seek relief in his own behalf for breach of fiduciary duty under ERISA was raised in *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). *Varity* answered that question in the affirmative, holding that plan participants and beneficiaries may sue for individual "appropriate equitable relief" pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and are not limited solely to relief in favor of the plan itself as in *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985), construing ERISA § 502(a)(2). *Id.* at 506–16, 116 S.Ct. at 1075–79.

We are convinced that the employer is the agent of the insurer in performing the duties of administering group insurance policies. It cannot be said that the employer acts entirely for its own benefit or for the benefit of its employees in undertaking administrative functions. While a reduced premium may result if the employer relieves the insurer of these tasks ... the insurer also enjoys significant advantages from the arrangement.

67 Cal.2d at 512–13, 63 Cal.Rptr. at 41, 432 P.2d at 737. For the *Elfstrom* court, agency depended on the question of control:

The most persuasive rationale for adopting the view that the employer acts as the agent of the insurer ... is that the employee has no knowledge or control over the employer's actions in handling the policy or its administration. An agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control ... It is clear from the evidence regarding procedural techniques here that the insurer-employer relationship meets this agency test with regard to the administration of the policy, whereas that between the employer and its employees fails to reflect true agency. The insurer directs the performance of the employer's administrative acts, and if these duties are not undertaken properly the insurer is in a position to exercise more constricted control over the employer's conduct.

67 Cal.2d at 513–14, 63 Cal.Rptr. at 42, 432 P.2d at 738; *see also Prudential Ins. Co. of America v. State Bd. of Equalization,* 21 Cal.App.4th 458, 482, 26 Cal.Rptr.2d 287, 303 (1993) ("As expressed in *Elfstrom,* the agency relationship was shown by the insurer's control over the bookkeeper's performance of tasks relating to the insurance, i.e., the bookkeeper/agent performed functions under the insurer/principal's direction and for the principal's benefit.").

In reaching its conclusions regarding agency, *Elfstrom* cited this court's earlier decision in *John Hancock Mut. Life Ins. Co. of Boston v. Dorman,* 108 F.2d 220 (9th Cir.1939). In *John Hancock,* Western Bakeries, the employer, "handled" the insurance under a group life/disability insurance master policy obtained for the benefit of employees; Western Bakeries had accepted insurance applications, determined employee eligibility, issued certificates of insurance, and collected premiums, all of which it then reported to the insurer. We held that the employer was the insurer's agent in handling these tasks and that acceptance of premiums by the insurer through its agent/employer estopped the insurer from claiming that the insured was not an employee within the meaning of the policy. 108 F.2d at 222–23, 224.

More recent California cases echo the *Elfstrom/John Hancock* rule. In *McCormick v. Sentinel Life Ins. Co.,* 153 Cal.App.3d 1030, 200 Cal.Rptr. 732 (1984), the California Court of Appeals explained:

In *Elfstrom v. New York Life Ins. Co.* (1967) 67 Cal.2d 503, 505, 63 Cal.Rptr. 35, 432 P.2d 731, our high court considered whether the acts of an employer who administered a group health insurance policy could be attributed to the defendant insurer. After reviewing conflicting cases from other jurisdictions, the court concluded the employer was acting as the insurer's agent and hence the insurer was liable for the employer's conduct. (*Id.,* at p. 508, 63 Cal.Rptr. 35, 432 P.2d 731, citing Rest.2d Agency, §§ 165, 282(2), and pp. 512–513.) In rejecting the view the employer acted as the employee's agent, the court cited the employer's assumption of the insurer's administrative functions and the employee's lack of control over the employer's actions in handling the policy. (*Id.,* at pp. 513–514, 63 Cal.Rptr. 35, 432 P.2d 731; *accord Bareno v. Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 883, 103 Cal.Rptr. 865, 500 P.2d 889; *Pantzalas v. Superior Court* (1969) 272 Cal.App.2d 499, 504, 77 Cal. Rptr. 354.)

Here, the credit union, like the employer in *Elfstrom,* performed administrative duties in connection with processing claims under Sentinel's disability policy. It is undisputed the credit union assumed such responsibilities as mailing the initial claim form to McCormick, notifying Sentinel of a possible claim from McCormick, and apprising McCormick his claim was incomplete. It also appears likely McCormick had no control over the credit union's ac-

tions. Under these circumstances a triable issue exists as to whether the credit union was acting as Sentinel's agent. If the fact finder determines an agency relationship, as defined in *Elfstrom,* did exist, the credit union's acts can be attributed to Sentinel. 153 Cal.App.3d at 1040–41, 200 Cal.Rptr. at 737; *see also Metropolitan Life Ins. Co. v. State Bd. of Equalization,* 32 Cal.3d 649, 658–59, 652 P.2d 426, 431, 186 Cal.Rptr. 578, 583 (1982) (*Elfstrom* is controlling on issue whether an employer acts as the insurer's agent in administering group insurance policies); *Bass v. John Hancock Mutual Life Ins. Co.,* 10 Cal.3d 792, 797, 518 P.2d 1147, 1150, 112 Cal.Rptr. 195, 198 (1974) ("[W]e have held that the employer is the agent of the insurer in performing the duties of administering group insurance policies ... and that accordingly the insurer shares responsibility for the employer's mistakes."); *Caldwell v. United Bus Corp.,* 177 Cal.App.3d 381, 383–84, 223 Cal.Rptr. 7, 8 (1986) ("The general rule in California is that the employer is merely the agent of the insurer in performing the duties of administering group health insurance policies.").

Other jurisdictions as well have adopted a similar approach to the agency question. *See, e.g., Middleton v. The Russell Group, Ltd.,* 126 N.C.App. 1, 483 S.E.2d 727, 734 (1997) (holding that "[a]n employer who performs administrative functions [under a group insurance policy], as in the instant case, is deemed to be the agent of the insurer," (citing *Elfstrom* )), and cases cited therein; *Abbiati v. Buttura & Sons, Inc.,* 161 Vt. 314, 324, 639 A.2d 988, 993–94 (1994) (agency relationship may be founded upon the policyholder's performance of administrative tasks

on behalf of the insurer); *Kirkpatrick v. Boston Mut. Life Ins. Co.,* 393 Mass. 640, 645–46, 473 N.E.2d 173, 176–77 (1985) ("Whether or not the employer acts as the insurer's agent is a factual question to be resolved on a cases by case basis."); *Norby v. Bankers Life Co. of Des Moines, Iowa,* 304 Minn. 464, 471–72, 231 N.W.2d 665, 670 (1975) ("the employer policyholder may, in appropriate circumstances, be found to be the agent of the group insurer of employees").

In *Paulson v. Western Life Ins. Co.,* 292 Or. 38, 636 P.2d 935 (1981), the Oregon Supreme Court held that whether an employer acted as agent for an insurer in administering a group policy presented a triable issue of fact. The *Paulson* court read *Elfstrom* and other cases as applying a rule expressed in these terms: "In the performance of a function delegated by the insurer to the employer, the employer is deemed to be the agent of the insurer." 636 P.2d at 941.[6]

### MAC's Administration of the UNUM Policy

Central to Ward's agency theory under *Elfstrom* must be proof that MAC participated in the administration of UNUM's group disability insurance policy and performed insurance-related tasks delegated by or carried on under the direction and ultimate control of UNUM. Ward points to the fact that MAC was designated as plan administrator by the MAC Plan as well as to specific provisions of the UNUM policy (Sec.VI, ¶ D) requiring MAC to furnish information to UNUM concerning employees who become eligible for coverage, whose coverage changes in amount, or whose coverage terminates.

---

**6.** *Paulson* rejected the view that the cases divide into a "majority rule" and a "minority rule" concerning the employer-agency question:

> Our analysis of the decisions convinces us that many courts, even though they purport to apply a "majority rule" or a "minority rule," actually base their decision upon the facts relating to the division of functions between the insurer and the employer-policyholder, and that any "majority" or "minority" rule is more apparent than real. It is more correct to say that when the plan is exclusively administered by the insurer, as a matter of law no agency relationship exists between the insurer and the employer. But if the employer performs all of the administration of the policy, an agency

relationship exists between the insurer and the employer, as a matter of law. Between these two extremes, as the division of functions becomes less separate, or to put it another way, as the employer assumes responsibility for more administrative or sales functions which are customarily performed by an insurer, a question of fact will arise as to the agency relationship between the insurer and the employer.

636 P.2d at 939.

The *Paulson* formulation of the *Elfstrom* rule appears sound. It also comports with our prior determination of the same issue in *John Hancock.*

Arguing that courts must follow an "absolute and literal interpretation"[7] of the language of ERISA plan documents, UNUM points to Section VI, Paragraph L of its long-term disability policy, which reads:

L. AGENCY

For all purposes of this policy, the policyholder acts on its own behalf or as agent of the employee. Under no circumstances will the policyholder be deemed the agent of the Company without a written authorization.

Averring that no such written authorization was ever issued to MAC, and that "MAC's involvement in the LTD [long-term disability] claims process was, at most, acting as a conduit between MAC employees and UNUM," UNUM urges the conclusion that "MAC is not UNUM's agent."

▪▪▪▪▪ Of course, the existence of an agency relationship generally presents a question of fact:

Whether as between the parties their relationship is one of agency depends on their relations as they in fact exist under the agreement or acts of the parties, and the question is not governed by the stipulations of the parties. Thus, whether a particular relationship is that of agency does not depend on what the parties call it, and the parties cannot, where the relationship is in fact one of agency, change its nature by declaring that it is not an agency, nor can they, by calling their relations one of agency, make it so when it is not so in fact. The surrounding facts and circumstances determine the relationship, regardless of

the understanding of the parties as to the exact nature of the relationship. . . .

2A C.J.S. *Agency* § 7 (1972) (footnotes omitted); *accord, Wallace v. Sinclair,* 114 Cal. App.2d 220, 250 P.2d 154, 160–61 (1952); *American Marine Paint Co. v. Nyno Line,* 70 Cal.App. 415, 233 P. 366, 369 (1924) ("nor does it matter whether or not his employment be called an agency"); 3 Am.Jur.2d *Agency* § 21 (1986) ("The manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." (footnote omitted)); 2(pt. 2) Cal. Jur.3d *Agency* § 12, at 170–73 & nn. 77–93 (1997) (citing *Elfstrom* ). Ordinarily, an agency relationship may be established through evidence of control and apparent or applied authority, even where the parties have agreed to the contrary. *See, e.g., Kuchta v. Allied Builders Corp.,* 21 Cal.App.3d 541, 547, 98 Cal.Rptr. 588, 591 (1971) (notwithstanding that "the agreement itself stated that no such agency relationship was created, the declarations of the parties in the agreement respecting the nature of the relationship are not controlling."); *Fernander v. Thigpen,* 278 S.C. 140, 293 S.E.2d 424, 426 (1982).

However, UNUM also asserts that ERISA preempts the *Elfstrom* rule because *Elfstrom* imposes respondeat superior liability; according to UNUM, "ERISA's rule of *personal* fiduciary liability not only supersedes, but

**7.** For this proposition, UNUM cites *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1285–86 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). Headnote no. 7 of the *Madden* opinion recites that "[f]iduciary's delegate properly gave absolute and literal interpretation to long-term disability plan's definition of 'total disability', which required that employee was unable to engage in any occupation," but this synopsis does not accurately reflect the relevant portion of the *Madden* opinion. What *we* said was "Metropolitan's use of the Plan definition was clearly proper, because as an ERISA fiduciary, Metropolitan was required to apply the terms of the Plan. *See* ERISA, 29 U.S.C. § 1104(a)(1)(D) (1988)." 914 F.2d at 1286 n. 6.

While this court has more recently admonished that "[a]n ERISA plan administrator abuses its discretion if it construes provisions of plan in a

way that 'conflicts with plain language of plan,' " *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 458 (9th Cir.1996) (quoting *Taft v. Equitable Life Assur. Soc'y,* 9 F.3d 1469, 1472 (9th Cir.1993)), we have yet to endorse a rule of strict, absolute or literal construction of ERISA plan documents. Indeed, *Saffle* appears to reject a "literal" construction of plan language in favor of a "reasonable" one, consistent with case law from other circuits. *See id.* at 458–59 (citing *Helms v. Monsanto Co., Inc.,* 728 F.2d 1416, 1420 (11th Cir. 1984) (rejecting arbitrator's "absolute and literal" interpretation of "totally and permanently disabled" to mean complete helplessness as unreasonable because it would render the entire plan meaningless and would contradict policies underlying ERISA); *Torix v. Ball Corp.,* 862 F.2d 1428 (10th Cir.1988) (same)).

is inconsistent with, the doctrines of respondeat superior and vicarious liability." Nor could the *Elfstrom* rule be adopted as a matter of federal common law because adoption of respondeat superior and vicarious liability theories would impermissibly "revise the text" of ERISA by adding causes of action or remedies not affirmatively authorized by the statute. *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 259, 113 S.Ct. 2063, 2070, 124 L.Ed.2d 161 (1993) ("The authority of courts to develop a 'federal common law' under ERISA ... is not the authority to revise the text of the statute.").

No prior Ninth Circuit opinion has addressed the relationship of ERISA to state agency law,[8] or more specifically, whether ERISA preempts the rule of California state law announced in *Elfstrom*. Nor has any prior opinion of this court discussed whether under circumstances such as these, federal statutory or common law creates the agency relationship that Ward suggests.

Looking to case law from other circuits, *Turrill v. Life Ins. Co. of North America*, 753 F.2d 1322 (5th Cir.1985), informs our inquiry. Turrill, an American Airlines facility maintenance mechanic, became disabled after a fall on a wet floor at the Dallas/Ft. Worth airport. The insurer had issued a group disability insurance policy to American Airlines that was in effect at the time of the accident. Turrill did not submit notice or proof of his claim directly to the insurer until more than two years after the accident. However, soon after the accident, he did submit an array of documentation concerning his injury to his employer. Reversing summary judgment in favor of the insurer on grounds of timeliness, the Fifth Circuit concluded that "a genuine issue of material fact exists regarding the authority of American Airlines to receive proofs of loss" as an agent of the insurer. *Id.* at 1324. "Whether such an agency relationship existed bears heavily on the timeliness of Turrill's proof of loss. . . ." *Id.*

To resolve the agency question, the *Turrill* court looked both to Texas agency law and to ERISA.

Under the Employee Retirement Income Security Act of 1974 (ERISA), ..., an employer who, like American Airlines, provides disability benefits through a group insurance policy owes fiduciary duties to the participating employees and their beneficiaries. *See* 29 U.S.C. § 1104(a)(1) (1982) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and the beneficiaries.") The fiduciary obligations of such an employer easily include responsibility to take care that the insurance company receives documentation necessary under the group policy to achieve recovery on a just benefits claim. This is especially so if the documentation is already in the agent's hands. ERISA thus obliged American Airlines to exercise care and diligence in assuring compliance with the proof of loss requirements of the master policy. It also required the employer to provide to participating employees extensive information regarding the plan. 29 U.S.C. § 1021 (1982).

. . .

ERISA compels the employer (or other plan fiduciary) to act affirmatively in administering and providing information on its employee benefits plan. In cases involving group policies, the requisite employer's efforts include determining employees' eligibility for coverage, enrolling them in the plan and group policy, advising them as to scope of benefits, collecting and forwarding premiums, and helping employees file claims. An insurance company normally performs these functions. But in group insurance situations where ERISA applies, the employer and group insurer typically develop a course of dealing in which the employer substitutes for the insurer in a relationship that ERISA impliedly may require.

---

8. We have noted, however, that *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), "construed the term 'employee' in the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§ 1002(6), as incorporating 'judicial agency law criteria for identifying master-servant relationships.' *Id.* at 319, 112 S.Ct. at 1346 . . . ." *Coupar v. United States Department of Labor*, 105 F.3d 1263, 1266–67 (9th Cir.1997).

Under these circumstances, courts may properly infer an agency relationship. The group insurer's failure to disavow the sufficiency of the employer's performance of functions that ERISA requires the employer to perform can properly lead to a conclusion that the group insurer is representing that an agency relationship exists as to those functions. . . .

*Id.* at 1325 (footnote & citation omitted). The *Turrill* court held that "proof of an employer's ERISA-based reporting and fiduciary responsibilities with respect to a group insurance policy in itself raises an issue under Texas law as to the existence of an agency relationship between the employer and the group insurer." *Id.* Nothing in *Turrill* even hints that state agency law is somehow preempted by ERISA.

*MAC's Fiduciary Duties Under ERISA*

■ In enacting ERISA, Congress did not explicitly enumerate all the duties of an ERISA fiduciary, and did not describe every instance in which an employer acts in a fiduciary capacity, but intentionally left many of these details for the courts to develop in light of the special nature and purpose of employee benefit plans. *Varity Corp. v. Howe,* 516 U.S. 489, 495–97, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996). ERISA contemplates that an employer often will act as both employer and plan fiduciary, but not all of an employer's business activities implicate ERISA's fiduciary duties. *Id.* at 497–500, 116 S.Ct. at 1071.

■ At minimum, ERISA makes an employer who exercises "discretionary authority or discretionary responsibility" in plan administration a fiduciary:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretion-

ary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). An employer who performs "purely ministerial functions" in administering a plan may not be a fiduciary, but even so, "[t]he issue is not just how the duties are characterized, but what they are." *IT Corp. v. General American Life Ins. Co.,* 107 F.3d 1415, 1419 (9th Cir.1997); *see also* 29 C.F.R. § 2509.75–8, at D–2 (1996) ("[P]ersons who have no power to make any decisions as to plan policy, interpretations, practices or procedures" are not fiduciaries under ERISA).

In this case, MAC's activities as plan administrator included determining employees' eligibility for coverage, enrolling them in the plan, issuing certificates of insurance under the group policy, advising employees as to scope of benefits, collecting and forwarding premiums to UNUM, and on occasion, at least, helping employees file claims. In addition, the certificate of coverage and summary plan description pamphlet prepared by UNUM and distributed to MAC employees by MAC advises employees that MAC is the Plan Administrator, that "[t]he people who operate your Plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries," and instructs employees that "[i]f you have any questions about your Plan, you should contact the Plan Administrator." [9]

■ Arguably, MAC has assumed fiduciary duties under ERISA in the administration of the MAC Plan.[10] Consistent with *Turrill,* proof of MAC's fiduciary duties under ERISA with respect to UNUM's group insurance policy raises an issue under California law as to the existence of an agency relationship between the employer and the group insurer in light of *Elfstrom.*

*ERISA Preemption*

■ Within its reach, ERISA regulates plans which provide employees with

---

9. UNUM's certificate of coverage also counsels employees that "[i]f you have any questions about any terms and provisions, please contact the Insurance Administrator at your work location or write to our claims paying office."

10. The term "fiduciary" has a broader meaning under ERISA than at common law because ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens,* 508 U.S. at 262, 113 S.Ct. at 2071.

pension and welfare benefits. "It is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Burgio and Campofelice, Inc. v. New York State Dep't of Labor,* 107 F.3d 1000, 1007 (2d Cir.1997). Section 514(a) of ERISA promotes uniform federal regulation of employee benefit plans by preempting "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, subject to limited exceptions. 29 U.S.C. § 1144(a). Section 514(a)'s purpose "was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990).

 While § 514(a)'s language is "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), ERISA does not preempt "if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, . . . as is the case with many laws of general applicability. . . ." *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). In fields of traditional state regulation, ERISA preempts state law only if that is " 'the clear and manifest purpose of Congress.' " *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The Supreme Court recently acknowledged the existence of "myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." *California Div. of Labor Standards Enforcement v. Dillingham Constr.,*

—— U.S. ——, ——, 117 S.Ct. 832, 842, 136 L.Ed.2d 791 (1997).

In each instance, the intent of Congress controls our analysis of preemption under ERISA. Yet the statute itself offers little guidance as to when a state law "relates to" an ERISA plan within the meaning of § 514(a). In the *Travelers* case, the Supreme Court observed that courts "must simply go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." 514 U.S. at 656, 115 S.Ct. at 1677. In light of legislative history indicating that "the basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans," the *Travelers* Court concluded that two types of state laws "relate to" employee benefit plans within § 514(a): laws that "mandat[e] employee benefit structures or their administration," and laws that "provid[e] alternative enforcement mechanisms." *Id.* at 657–58, 115 S.Ct. at 1677–78.

*ERISA and* Elfstrom

 ERISA and *Elfstrom* are not anathema. *Elfstrom* does not dictate the benefits to be provided or the manner in which the plan will be administered. *Elfstrom* does not require an employer to participate in the administration of a group insurance policy or an insurer to delegate its functions to an employer.[11] Nor does *Elfstrom* create an "alternate enforcement mechanism" for ERISA plan obligations beyond those set forth in the statute. *Contrast Pilot Life,* 481 U.S. at 55–57, 107 S.Ct. at 1557–58. *Elfstrom* simply describes in legal terms a relationship that already exists in fact.

As *Turrill* illustrates, the principle that an employer who undertakes responsibilities in administering an employee benefit plan assumes fiduciary duties under ERISA meshes smoothly with the *Elfstrom* rule that an employer who assumes such responsibilities in

---

11. In this case "California is not telling employers how to write their ERISA plans. Nor is it conditioning some requirement on how individual employers write their ERISA plans." *WSB*

*Elec., Inc. v. Curry,* 88 F.3d 788, 796 (9th Cir. 1996); *see Employee Staffing Services, Inc. v. Aubry,* 20 F.3d 1038, 1041 (9th Cir.1994).

administering a group insurance policy acts as the agent of the insurer. *Turrill,* 753 F.2d at 1324–25; *see also Middleton,* 483 S.E.2d at 732–35 (on claim for unpaid benefits under ERISA § 502, *Elfstrom* rule applies to hold insurer accountable for employer's mistake in denying former employee COBRA continuation coverage; other state law claims preempted by ERISA).

 Ostensibly, the legislative effort was to ensure that employee benefits are provided through an ERISA plan overseen by plan fiduciaries, including the plan insurer and those who the insurer may enlist to participate in the administration of the plan. Nothing in § 514(a) empowers a plan fiduciary to extend ERISA's preemptive reach by using policy language that negates agency law principles in favor of exonerating itself from the errors of those who act on its behalf. *Cf. IT Corp.,* 107 F.3d at 1418 (any interpretation of a plan which prevents a plan fiduciary from being held liable as a fiduciary is void); 29 U.S.C. § 1110(a). Plan documents defining or disavowing a relationship do not have the status of the ERISA statute, particularly when the actions of the signators belie the document recitals.[12]

Even if UNUM could by agreement with MAC exonerate itself of its agency relationship as against MAC, there is no reason to suppose that the agreement would exonerate UNUM from its duties to participants and beneficiaries of the ERISA plan, or the conduct of those who act on its behalf with apparent authority. The employee partici-

pants did not sign the agreement bearing the agency disclaimer and they are entitled to have the plan administered in the interest of participants and beneficiaries. *See* 29 U.S.C. § 1104. Absent the insurer's overt disavowal of the sufficiency of the employer's performance of functions under the plan, actually communicated, the participants and beneficiaries should be able to rely upon the relationships that exist. Nothing in ERISA suggests that in availing themselves of plan benefits, employee participants must sift plan documents for hidden disclaimers that the designated plan administrator does not act as agent for the plan or its insurer.[13] The statute must do more than set traps for the unwary.

Applied in the context of this case, *Elfstrom* does not operate to create a cause of action against UNUM outside of the exclusive claim for unpaid benefits pursuant to § 502(a) of ERISA, 29 U.S.C. § 1132(a), pleaded in Ward's complaint. *Contrast Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 494–95 (9th Cir.1988) (state statutory claim for delayed benefits payment preempted by ERISA); *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990) (state law tortious breach of contract and bad faith claims against insurer for nonpayment of benefits preempted by ERISA). Nor does *Elfstrom* alter the facts as between MAC and UNUM, or create an agency relationship that may or may not exist as a consequence of the parties' own course of dealing. The

---

**12.** Merely reciting that "if the terms of your certificate of coverage and the policy differ, the policy will govern" does not resolve the question. Where the certificate remains silent on the subject of agency, the existence in fact of an agency relationship does not constitute a "term" of the certificate.

Whether an agent or not, if an employer/plan administrator exercises sufficient authority over the plan to become an ERISA fiduciary, contractual policy disclaimers could not limit fiduciary and co-fiduciary liability under ERISA. *See IT Corp.,* 107 F.3d at 1418–19.

**13.** UNUM cites *Kennedy v. System One Holdings, Inc.,* 835 F.Supp. 947 (S.D.Tex.1993), as rejecting a participant's claim that UNUM was estopped from denying his late claim based upon misrepresentations by the employer/plan administrator because, *inter alia,* "the Plan clearly and unambiguously provides that System One is not

UNUM's agent...." *Id.* at 951 (footnote omitted). *Kennedy* relies on policy language essentially identical to Section VI, Paragraph L of the long-term disability policy issued to MAC. *See id.* at 951 n. 5. However, *Kennedy* does not discuss *Turrill,* and nothing in *Kennedy* suggests that the plaintiff gave his employer timely notice of his disability claim, or even that the employer had undertaken administrative responsibilities under the insurance policy in question. In fact, *Kennedy* identifies UNUM-not the employer-"as administrator of the long term disability benefits plan at issue in this case." *Id.* at 949; *see also id.* at 948 (plaintiff sought benefits under "an employee welfare benefit plan ('Plan') administered by UNUM"). Thus, *Kennedy* does not address the *Elfstrom* rule because the issue was not raised in that case.

Indeed, we could identify no reported case giving the effect to this language now urged by UNUM.

question ultimately for the district court under *Elfstrom* becomes whether MAC acted for UNUM and under UNUM's control in receiving and forwarding long-term disability claims, and thus whether timely notice to MAC of Ward's disability operated as timely notice to UNUM as well.

In the context of a claim for unpaid benefits under § 502(a), ERISA does not operate to preempt the application of the state law embodied in *Elfstrom* and its progeny to determine the question of timeliness of notice and proof of claim. We are not persuaded that Congress had as its clear and manifest purpose the abrogation of state agency law as it applies to insurers and employers administering group insurance policies.

 Whether MAC acted as fiduciary and as agent of UNUM in administering the MAC Plan's long-term disability policy, particularly in receiving and forwarding claims for benefits,[14] cannot be decided as a matter of law on the existing record. The questions of employer-insurer agency and employer fiduciary duty instead raise genuine issues of fact.[15] However, these issues become material in this case only if the question of timeliness of submission of proof of claim to UNUM, including actual prejudice under *Cisneros,* is ultimately resolved adversely to Ward.

The judgment of the district court is RE-VERSED and the case is REMANDED to the district court with instructions to remand to the plan administrator for a determination as to whether UNUM suffered actual prejudice by reason of the delay in submission of Ward's notice of claim, and if necessary following remand to the plan administrator, to determine whether MAC acted as ERISA fiduciary and as agent of UNUM in administering the MAC Plan's long-term disability policy, particularly in receiving and forwarding claims for benefits, and if so, whether Ward furnished timely notice and proof of his disability to MAC, and if so, to what remedies Ward may be entitled.

---

14. *See Norby,* 304 Minn. at 472, 231 N.W.2d at 670 ("The focus ... should be on which specific and relevant administrative functions are performed by the employer on behalf of the insurer, with respect to the particular ground asserted for ... nonpayment under the policy.... An employer may be considered an agent of an insurer for some purposes but not for others.")

15. The extent of UNUM's liability, if any, for breach by a co-fiduciary pursuant to 29 U.S.C. § 1105(a) depends, *inter alia,* on UNUM's knowledge of the breach, which raises even more issues of fact. That MAC has not been joined as a party to this litigation does not impair Ward's

entitlement to relief under ERISA § 502(a)(1), but may raise procedural questions as to any further relief sought under § 502(a)(3). *Cf. Madden,* 914 F.2d at 1287 (" 'ERISA permits suits to recover benefits only against the Plan as an entity, ... and suits for breach of fiduciary duty only against the fiduciary.' " (quoting *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985) (citations omitted)).

Moreover, to the extent that Ward may be entitled to receive payment of benefits pursuant to ERISA § 502(a)(1), further equitable relief under § 502(a)(3) may not be "appropriate." *Varity Corp.,* 516 U.S. at 514–16, 116 S.Ct. at 1079.