Filed 11/15/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARTY LAT et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FARMERS NEW WORLD LIFE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B282008<br><br>(Los Angeles County<br>Super. Ct. No. BC528211)<br><br>ORDER MODIFYING THE OPINION (NO CHANGE IN THE JUDGMENT) AND DENYING RESPONDENT'S PETITION FOR REHEARING |

THE COURT:

The opinion filed in the above-entitled matter on October 16, 2018 is modified.

1.    On page 2, the entire first sentence of the opinion is deleted and replaced with the following sentence:

In 1993, Maria Carada purchased a life insurance policy from Farmers New World Life Insurance Company (Farmers) and named her sons Marty and Mikel Lat (collectively the Lats) as beneficiaries.

2. On page 8, the second sentence of the first full paragraph (that begins "There is no dispute" and ends "notice of her disability.") is deleted and replaced with the following sentence:

Farmers, in its motion for summary judgment, did not challenge the Lats' allegations that Carada was totally disabled while the policy was in force.

3. On page 14, the first full paragraph on that page is deleted and replaced with the following four paragraphs:

These cases are inapplicable to Carada's policy because the Rider is analogous to occurrence-based policies, to which the notice prejudice rule has been applied. Like occurrence policies that provide " 'coverage for any acts or omissions that arise during the policy period even though the claim is made after the policy has expired' " (*Pacific Employers Ins. Co. v. Superior Court*, *supra*, 221 Cal.App.3d at p. 1356), the Rider provides a benefit—Farmers' waiver of deductions—for an act—Carada's disability—that arises during the policy period even though the claim for the waiver of deductions is made after the Rider and the policy have expired. Applying the notice prejudice rule in this instance would not, therefore, transform a claims made and reported policy into an occurrence policy or, as in *Slater*, effectively rewrite the contract between the parties. (*Slater*, *supra*, 227 Cal.App.3d at p. 1423.) Rather, applying the rule here would serve its purpose of preventing an insurance company from shielding itself from its " 'contractual obligations' through 'a technical escape-hatch.' " (*Carrington*, *supra*, 289 F.3d at p. 647.)

Farmers also relies on *Venoco, Inc. v. Gulf Underwriters Ins. Co.* (2009) 175 Cal.App.4th 750 (*Venoco*). In that case,

2

the insured oil company had a liability policy that generally excluded coverage for liability arising from pollution or contamination. (*Id*. at p. 757.) The oil company, however, negotiated for a "pollution buy-back provision," which provided for coverage of an accidental occurrence that " 'became known to the [oil company] within [seven] days after its commencement and was reported to [the insurance company] within 60 days thereafter.' " (*Id*. at pp. 756-758, italics omitted.) Six years after the policy expired, the oil company made a claim for coverage based upon alleged contamination that occurred during the policy term. (*Id*. at p. 758.) The Court of Appeal rejected the oil company's argument that the notice prejudice rule applied to its late notice of claim. (*Id*. at pp. 760-761.) The notice prejudice rule, the court explained, does not apply to a policy that provides "special coverage for a particular type of claim [that] is conditioned on express compliance with a reporting requirement." (*Id*. at p. 760.) This exception to the notice prejudice rule applied to the pollution buy-back provision because the policy provides "for expanded liability coverage that the insurer usually does not cover. The insurer makes an exception and extends special coverage conditioned on compliance with a reporting requirement and other conditions." (*Ibid*.)

We do not necessarily agree with the *Venoco* court's reasoning, which, in any case, does not apply here. Unlike the special coverage in *Venoco* for a particular, liability-expanding claim that the insurance company usually does not cover, the Rider to Carada's policy appears to be a standard policy rider that the insurance company will ordinarily provide for an additional premium. (See 5 Couch on Insurance, *supra*, § 75:16 ["The parties to the contract of insurance may ordinarily specify

in the contract that nonpayment of premiums shall be excused by the insured's sickness, incapacity, or disability" (fn. omitted)].) *Venoco*'s narrow exception to the notice prejudice rule, therefore, does not apply here.

Farmers also contends that the Rider "is nothing more than an alternative means of satisfying premium obligations, of paying premiums" and, just as one may not revive a policy by paying a premium after the policy has lapsed, Carada's policy cannot be revived "by showing that she could have satisfied the Rider prior to the lapse." This, as well as other arguments asserted by Farmers, assumes that Carada's policy had lapsed and could not thereafter be revived by late notice of her disability or otherwise. The problem with this argument is that the policy had ostensibly lapsed because Farmers denied Carada the Rider's deduction waiver benefit; if Carada was entitled to that benefit, the policy should not have lapsed. As discussed above, whether Carada was entitled to that benefit depends in part upon whether Farmers was prejudiced by the late notice of her disability.

These modifications do not constitute a change in the judgment.

The petition for rehearing filed by respondent Farmers New World Life Insurance Company on October 31, 2018 is denied.

**CERTIFIED FOR PUBLICATION.**

_____

ROTHSCHILD, P. J.          JOHNSON, J.          BENDIX, J.

Filed 10/16/18 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARTY LAT et al., | B282008 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC528211) |
| v. | |
| FARMERS NEW WORLD LIFE INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge. Reversed.

————————————

Kantor & Kantor, Glenn R. Kantor, and Alan E. Kassan for Plaintiffs and Appellants.

Hinshaw & Culbertson, Royal F. Oakes, and Michael A. S. Newman for Defendant and Respondent.

————————————

In 1993, Maria Carada purchased an "occurrence" life insurance policy from Farmers New World Life Insurance Company (Farmers) and named her sons Marty and Mikel Lat (collectively the Lats) as beneficiaries. The policy included a rider under which Farmers agreed to waive the cost of the insurance while Carada was disabled if Carada provided Farmers with notice and proof of her disability. Carada was diagnosed with cancer in September 2012 and became disabled as a result. She did not provide Farmers with notice of her disability and made no payments on the policy after June 2013. In September 2013, Carada died.

After the Lats made a claim for benefits under the policy, Farmers denied the claim on the ground that the policy had lapsed before Carada died.

The Lats sued Farmers for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and the negligence of its agent. The trial court granted Farmers' motion for summary judgment and entered judgment in its favor.[1]

---

[1] The Lats' notice of appeal was filed on April 13, 2017, after the court granted Farmers' motion for summary judgment but before it entered judgment. Because the order granting summary judgment is a nonappealable order, the appeal was subject to dismissal. (*Modica v. Merin* (1991) 234 Cal.App.3d 1072, 1073-1075.) We provided the Lats with an opportunity to cure this defect, and they filed a copy of a judgment entered on July 6, 2017. Although the judgment revealed that the notice of appeal was premature and, therefore, still defective, we deem the notice of appeal to have been filed on the date of the judgment. (See *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.)

For the reasons given below, we reverse the judgment.

## BACKGROUND

In December 1993, Carada purchased a flexible premium universal life insurance policy (the policy) from Farmers. Under the policy, Farmers agreed to pay a death benefit to Carada's beneficiaries, the Lats, if Carada died while the policy was in force.

The policy established an "accumulation account" to which Carada's premium payments and interest were added and from which the monthly costs of insurance and other amounts were deducted. If the accumulation account was reduced below the amount needed to cover the next month's deductions, a 61-day grace period began within which Carada could pay the premium needed to cover the deduction. If the grace period expired before Farmers received the necessary premium payment, the policy was terminated and could not be reinstated.

The policy included a "Waiver of Deduction Rider" (the Rider), which provided that if Farmers "receive[d] proof that [Carada was] totally disabled," Farmers would "waive the monthly deductions due after the start of and during [Carada's] continued total disability." The policy defined total disability as including the inability to work for "a continuous period of at least six months." The deduction waiver is thus based upon the occurrence of Carada's total disability, as defined in the Rider.

The Rider further provided that Farmers needed to receive written notice of disability during the period of disability "unless it can be shown that notice was given as soon as reasonably possible." The Rider "will end when," among other events, "the policy ends."

3

In August 2012, Carada was diagnosed with "stage 4" colon cancer. The illness and its treatment rendered her unable to work and totally disabled as of August 2012.

On May 20, 2013, Farmers sent a letter to Carada advising her that the "premium payments received to date are insufficient to pay for the insurance coverage provided under the policy." The letter warned Carada that the policy was "in danger of lapsing" and stated that if Farmers did not receive a payment by the end of the grace period—July 20, 2013—the policy would "lapse and all coverage will terminate." Farmers sent a similarly worded letter to Carada on June 19, 2013.

On July 23, 2013, Farmers sent Carada a letter stating that the policy's "grace period has expired" and that the coverage under the policy was "no longer in force."

In August 2013 Carada contacted the insurance agent who had sold her the policy. She advised the agent of her illness and disability and asked if the policy could be reinstated. The agent informed a Farmers representative that Carada was dying of cancer and asked if the policy could be reinstated. The representative told the agent that the policy had lapsed and could not be reinstated. The agent relayed this information to Carada.

Carada died on September 23, 2013.

The Lats thereafter contacted Farmers to claim the policy's death benefits. Farmers advised them that they were not entitled to receive the death benefit because the policy had lapsed.

In November 2013, the Lats sued Farmers and its agent. In February 2016, the Lats filed the operative second amended complaint, alleging causes of action against Farmers for breach of contract, breach of the implied covenant of good faith and fair

4

dealing, and vicarious liability for the alleged negligence of its agent.

Farmers moved for summary judgment, which the trial court granted in March 2017. The court explained that "the policy provides that it will lapse upon the expiration of [a] 61-day grace period following a delinquency in premium payments. The Rider provides that it ends when the policy ends. In this case, it is undisputed that [Carada] did not make her premium payments within the 61-day grace period, and that she did not make a disability claim or offer proof of her disability until after the grace period elapsed. Consequently, the policy lapsed, and so too did the Rider."

## DISCUSSION

### I. Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We apply a de novo standard of review to an order granting summary judgment, when on undisputed facts, the order is based on the interpretation of the terms of the insurance policy." (*Morris v. Employers Reinsurance Corp.* (2000) 84 Cal.App.4th 1026, 1029.)

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647.) Courts are mindful, however, of the "disparate bargaining status of the parties" in the insurance context (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 270), and, accordingly, " 'coverage clauses are interpreted broadly so as to afford the greatest

5

possible protection to the insured [while] exclusionary clauses are interpreted narrowly against the insurer.' " (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807-808.)

## II.    Analysis

Farmers contends that Carada's policy terminated in July 2013 when her accumulation account fell to a level that was insufficient to pay for coverage and she failed to make a premium payment within the 61-day grace period.  "Once the [p]olicy ended," Farmers argues, "the Rider ended" and could not be invoked by Carada or the Lats.  (Boldface and underlining omitted.)

The Lats assert that Carada was totally disabled within the meaning of the Rider and that the deductions that caused Farmers to declare a policy lapse were therefore waived.  Although Carada had not given to Farmers the notice of her disability that the Rider required, that requirement was excused by California's notice prejudice rule.

We agree with the Lats.

### A.    *The Notice Prejudice Rule Applies to the Rider*

Under the notice prejudice rule, an insurance company may not deny an insured's claim under an occurrence policy based on lack of timely notice or proof of claim unless it can show actual prejudice from the delay.[2]  (*Campbell v. Allstate Ins. Co.*

---

[2]  " '[A]n "occurrence" policy provides coverage for any acts or omissions that arise during the policy period even though the claim is made after the policy has expired.' " (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1356.)  It is distinguished from a claims made policy in which " 'the carrier

6

(1963) 60 Cal.2d 303, 305-306; *Joyce v. United Ins. Co.* (1962) 202 Cal.App.2d 654, 662; *Cisneros v. UNUM Life Ins. Co. of America* (9th Cir. 1998) 134 F.3d 939, 944; see *Root v. American Equity Specialty Ins. Co.* (2005) 130 Cal.App.4th 926, 930 [notice prejudice rule does not apply to claims made and reported policy]; see generally 13 Couch on Insurance (3d ed. 2018) § 193:66.) The rule is based on the rationale that " '[t]he primary and essential part of the contract [is] insurance coverage, not the procedure for determining liability[]' [citations], and that 'the notice requirement serves to protect insurers from prejudice, . . . not . . . to shield them from their contractual obligations' through 'a technical escape-hatch.' " (*Carrington Estate Planning v. Reliance Standard* (9th Cir. 2002) 289 F.3d 644, 647 (*Carrington*).)

The burden of establishing prejudice is on the insurance company (*Campbell v. Allstate Ins. Co.*, *supra*, 60 Cal.2d at p. 306), and prejudice is not presumed by delay alone (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 761). To establish prejudice, the " 'insurer must show it lost something that would have changed the handling of the underlying claim.' " (*Belz v. Clarendon America Ins. Co.* (2007) 158 Cal.App.4th 615, 632; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2018) ¶ 6:37, p. 6A-6 ["insurer would presumably have to show that the delayed notice

agrees to assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period.' " (*Id*. at pp. 1356-1357.) A " 'claims made and reported' " policy is further distinguished by a requirement that the claim be reported to the insurer within the reporting period. (*Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 888.)

and proof of loss *impaired its ability to investigate* and settle the claim"].)

Under the Rider in this case, there could be no deduction from Carada's accumulation account while she was totally disabled, provided she gave Farmers timely notice and proof of her disability. There is no dispute that Carada was totally disabled while the policy was in force and that she would have been entitled to the deduction waiver benefit under the Rider if she had given Farmers timely notice of her disability. Under a straightforward application of the notice prejudice rule, Farmers could not deny Carada the benefit of the deduction waiver unless Farmers suffered actual prejudice from the delayed notice. Farmers has made no such showing and, therefore, Carada was entitled to the deduction waiver benefit. If Farmers had provided that benefit, Carada's policy would have been in force at the time of her death. Indeed, the only reason Farmers terminated Carada's policy was that it applied the deductions it had promised Carada it would waive.

The fact that Farmers was unaware of Carada's disability when it declared the policy had lapsed explains *why* it declared the policy lapsed—indeed, Farmers appears to have been entirely innocent in making that determination—but once it learned of Carada's disability and, therefore, her entitlement to the deduction waiver, Farmers' continued refusal to honor its contractual obligations to Carada and her beneficiaries precludes summary judgment in its favor. When, as here, the insurance company discovers facts showing that its declaration of lapse should not have been made, the declaration of lapse is ineffective and the policy's terms may be enforced. (See *Doe v. Life Ins. Co. of North America (LINA)* (N.D.Cal. 2010) 737 F.Supp.2d

8

1033, 1042-1043 (*Doe*) [notice of disability given after insurance company cancelled policy was not prejudicial, and insured was entitled to coverage under the policy].)

The notice prejudice rule has been applied with similar results in analogous cases. In *Carrington*, *supra,* 289 F.3d 644, the insured, Zipoy, was covered under his employer's group life insurance policy, which included a premium waiver provision analogous to the Rider in the instant case. (See *id.* at p. 646, fn. 2.) Zipoy left his employer due to a disability and failed to notify the insurance company of the disability, as required to continue coverage. (*Id.* at p. 646.) After Zipoy died, the insurance company denied the death beneficiary's claim based in part on Zipoy's failure to notify the insurance company of his disability. (*Ibid.*) The district court granted the insurance company's motion for summary judgment on the ground that the notice prejudice rule did not apply to the notice of disability requirement. (*Id.* at p. 645.) The Ninth Circuit reversed and, applying the notice prejudice rule, stated: "If late notice of Zipoy's disability did not prejudice [the insurance company] in its ability to investigate the basis of [the beneficiary's] claim that the substantive requirements of the disability waiver were met, the reason behind the notice provision is lacking and it follows neither logic nor fairness to relieve [the insurance company] of its obligations under the policy." (*Id.* at p. 648.)[3]

---

[3] *Carrington*'s application of the notice prejudice rule was based on Rhode Island and Arizona law. (*Carrington*, *supra*, 289 F.3d at pp. 646-647.) The notice prejudice rule in those states is indistinguishable from the California rule. (Compare *id.* at p. 646 ["[u]nder Rhode Island and Arizona law, an insurer may not 'rely on any of the so-called "notice" provisions of its

9

In *Ward v. Management Analysis Co.* (9th Cir. 1998) 135 F.3d 1276, 1280 (*Ward*), affirmed in part and reversed in part on other grounds *sub nom. UNUM Life Ins. Co. of America v. Ward* (1999) 526 U.S. 358, an insurance company denied benefits under a disability policy because the insured failed to file a timely claim. (*Ward, supra*, 135 F.3d at p. 1279.) After the insured sued, the trial court granted the insurance company's motion for summary judgment. (*Id.* at p. 1278.) On appeal, the Ninth Circuit observed that the insurance policy "logically and unambiguously establish[ed] that . . . timely submission of proof [of claim] is a condition precedent to payment of benefits." (*Id.* at p. 1280.) The court nevertheless reversed because the condition was subject to California's notice prejudice rule and triable issues of fact remained as to whether the insurance company suffered actual prejudice as a result of the late claim. (*Ibid.*)

In *Doe, supra*, 737 F.Supp.2d 1033, Doe was insured under an employer-provided life insurance policy that provided for a waiver of premiums and continued coverage if the employee becomes disabled and gives the insurance company proof of his or her disability within a certain time. (*Id.* at pp. 1039-1040.) Doe became disabled and did not pay the policy premiums. After the insurance company informed him that his policy had lapsed, Doe sued and filed a motion for summary judgment seeking a judicial determination that he was covered by the policy and not

---

policy unless it . . . demonstrate[s] that it ha[s] been prejudiced by the lack of notice' "] with *Shell Oil Co. v. Winterthur Swiss Ins. Co., supra*, 12 Cal.App.4th at p. 760 [under California law, insurance company must prove that it suffered actual, substantial prejudice by the insured's failure to give timely notice of claim].)

required to pay premiums because of his disability.  Although there was some evidence that the insurance company received notice of the insured's disability, the court explained that even if it had not, the insurance company had "not shown prejudice under the notice-prejudice rule." (*Id.* at p. 1043.)  In particular, the court rejected the insurance company's argument that providing coverage under a policy that had lapsed nine years earlier was itself prejudicial.  (*Id.* at pp. 1042-1043.)  There was "nothing," the court explained, that suggested that the insurance company's "ability to investigate [the insured's] disability was compromised by late notice." (*Id.* at p. 1043.)

Farmers does not meaningfully distinguish these cases. *Ward*, Farmers states, "simply applied the 'notice prejudice' rule where it belongs—i.e., to a notice provision of a policy," (boldface and italics omitted) and *Carrington* is "simply a garden variety 'notice prejudice' case," and "an ordinary and unremarkable application of the 'notice prejudice' rule to a notice provision of a policy." (Italics omitted.)  As in *Ward* and *Carrington*, however, we also apply the notice prejudice rule in an unremarkable manner, and where it belongs:  to the notice provision in the Rider.  Farmers' attempt to distinguish *Doe* begins with a plea to ignore it because it is a federal trial court ruling, and follows with a discussion of factual differences between *Doe* and the instant case, none of which are legally relevant.

Because Farmers does not assert that it was prejudiced by the delayed notice of Carada's disability and there is no dispute that Carada was totally disabled within the meaning of the Rider, Carada was entitled to the benefit promised under the Rider:  to have the deductions charged to her account waived. Because the deductions should have been waived and Farmers'

11

denial of coverage was based solely on those deductions, Farmers has not established that, as a matter of law, Carada's policy had lapsed or that it was justified in denying her beneficiaries' claim under the policy.

## B. *Farmers' Arguments Are Unavailing*

Farmers presents a fundamentally different view of the case. It contends that Carada's failure to pay the policy deductions in 2013 resulted in a lapse of the policy in July 2013; that the lapse of the policy terminated the Rider; and that the termination of the Rider precluded Carada (or her beneficiaries) from receiving the deduction waiver benefit. The argument is circular: Its premise that the policy lapsed because Carada failed to pay the deduction assumes Farmers' conclusion that Carada was not entitled to the deduction waiver benefit because the policy had lapsed. If, of course, Carada was entitled to that benefit, she was excused from paying the deductions while she was disabled and the policy would not have lapsed.

If Farmers' view was accepted, the courts in *Carrington* and *Doe* could not have arrived at their results. In each case, the insured not only failed to give timely notice of his disability as required under the terms of the policy, but failed to give the notice until after the insurance company determined that the policy had lapsed. (*Carrington, supra*, 289 F.3d at p. 646 [in the absence of notice of disability, policy lapsed when insured discontinued employment]; *Doe, supra*, 737 F.Supp.2d at pp. 1036-1037 [same].) If, as Farmers contends, the ostensible lapsing of the policy precludes an insured's subsequent invocation of a disability-based waiver, the analysis in those cases would simply have been as Farmers proposes here: Because the policy had lapsed, the insureds could not invoke the disability-based

12

benefit and their claims were properly denied. In each case, however, the court considered the policy lapse immaterial; if the notice prejudice rule was applied in the insured's favor, he was entitled to the policy's benefits regardless of whether the insured had declared it to have lapsed.

Farmers' reliance on *Slater v. Lawyers' Mutual Ins. Co.* (1991) 227 Cal.App.3d 1415 (*Slater*) is misplaced. In that case, a lawyer (Slater), had a professional liability policy that covered him for claims made and reported to the insurance company within the policy period. (*Id.* at pp. 1419-1420.) After the expiration of the policy period, Slater tendered to his insurance company a complaint against him for legal malpractice. (*Id.* at p. 1418.) The Court of Appeal rejected Slater's reliance on the notice prejudice rule because that rule applies to notice requirements in policies that provide coverage based on the occurrence of an identifiable event, or "occurrence" policies, not policies that define coverage based on the making and reporting of a claim to the insurance company, or claims made and reported policies. (*Id.* at pp. 1421-1424.) Applying the notice prejudice rule to a claims made and reported policy such as Slater's, the court explained, would effectively convert the policy into an occurrence policy, thereby extending coverage beyond the parties' agreement. (*Id.* at p. 1423; see *Root v. American Equity Specialty Ins. Co.*, *supra*, 130 Cal.App.4th at p. 947 [applying notice prejudice rule to claims made and reported policies would "effectively obliterate[] the 'and reported' part of the 'claims made and reported' policy"].) The court therefore rejected Slater's claim. Similar reasoning and results are found in other cases Farmers relies upon. (See, e.g., *Pacific Employers Ins. Co. v.*

13

*Superior Court*, *supra*, 221 Cal.App.3d at p. 1357; *Industrial Indemnity v. Superior Court* (1990) 224 Cal.App.3d 828, 830.)

These cases are inapplicable to Carada's policy because her policy is an occurrence policy as to coverage for her disability as well as coverage for her death. Applying the notice prejudice rule in this instance would not, therefore, transform a claims made and reported policy into an occurrence policy or, as in *Slater*, effectively rewrite the contract between the parties. (*Slater*, *supra*, 227 Cal.App.3d at p. 1423.) Rather, applying the rule here would serve its purpose of preventing an insurance company from shielding itself from its " 'contractual obligations' through 'a technical escape-hatch.' " (*Carrington*, *supra*, 289 F.3d at p. 647.)

For the foregoing reasons, Farmers was not entitled to judgment as a matter of law, and the court erred in granting its motion for summary judgment.

## DISPOSITION

The judgment is reversed.  The Lats are awarded their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


ROTHSCHILD, P. J.


We concur:



JOHNSON, J.



BENDIX, J.


15